UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KATHLEEN JONES,

                              Plaintiff,

        -against-                                    1:13-cv-0806 (LEK/CFH)

TOWN OF WHITEHALL, *et al.*,

                              Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Plaintiff Kathleen Jones ("Plaintiff") commenced this employment action on July 9, 2013,

against Defendants Town of Whitehall (the "Town"), George Armstrong ("Armstrong"), and Louis

D. Pratt II ("Pratt") (collectively, "Defendants").  Dkt. No. 1 ("Complaint").  Presently before the

Court is Defendants' Motion for summary judgment. Dkt. Nos. 22 ("Motion"); 22-20

("Memorandum").  For the following reasons, the Motion is granted in part and denied in part.

## II.   BACKGROUND

### A.  Plaintiff's Employment with the Town

        Plaintiff was employed as a Clerk to the Town Supervisor, Clerk to the Highway

Superintendent, and Budget Officer for the Town from April 2010 until her termination on January

9, 2013.  Dkt. Nos. 22-19 ("Defendants' Statement of Material Facts") ¶¶ 7-8, 23; 22-6 ("Jones

Deposition") at 24:07-28:02.[1]  Plaintiff held these positions simultaneously.  Defs.' SMF ¶¶ 7-8.

_____

        [1] The Court notes that the Statements of Material Facts submitted by both parties were
incomplete and failed to substantially comply with Local Rule 7.1(a)(3).  The Rule cautions that
"[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall
result in a denial of the motion." L. R. 7.1(a)(3) (emphasis in original).  Since the parties attempted
to comply with the Rule and because the Statements of Material Facts submitted by the parties were

Plaintiff was appointed to these positions by Town Highway Superintendent Pratt and Town Supervisor Richard Gordon ("Gordon"). Defs.' SMF ¶¶ 4-5; 11; Jones Dep. at 28:03-07. Armstrong replaced Gordon as Town Supervisor in January 2012. Defs.' SMF ¶ 2.

### B. Plaintiff's Entitlement to Overtime Compensation

Plaintiff's scheduled hours were from 7:30 a.m. to 2:30 p.m., Monday through Friday, which coincided with her daughter's school schedule. Defs.' SMF ¶ 15. Plaintiff admits that she was expected to work thirty-five hours per week, and that there was no express agreement stating that she was entitled to overtime. Dkt. Nos. 28 ("Plaintiff's Response to Statement of Material Facts") ¶ 9; 28-1 ("Jones Declaration") ¶ 52. On June 29, 2011, Plaintiff signed a "notice and acknowledgment of pay rate and pay day," acknowledging that she would receive a salary of $30,306.00 per year for thirty-five hours of work per week. See Dkt. No. 22-10 ("Agreement"); Jones Dep. at 30:01-22. When prompted to fill in the overtime pay rate on the form, Plaintiff wrote "N/A" (not applicable). Agreement. Plaintiff confirmed that she understood that she was not entitled to overtime during her deposition. Jones Dep. at 31:02-32:08.

Defendants state that Plaintiff rarely worked more than thirty-five hours per week, and often took time off during the work day to take her daughter to school events and appointments. Defs.' SMF ¶ 15. Plaintiff contends that she worked an average of forty-eight hours per week, thereby entitling her to overtime compensation. Pl.'s SMF ¶ 15; Jones Decl. ¶ 59. Plaintiff further argues that Defendants violated her rights by failing to provide an uninterrupted thirty minute lunch break, which is required for non-exempt employees. Compl. ¶¶ 69-71. Defendants deny ever advising or directing Plaintiff to forego a lunch break. Defs.' SMF ¶ 25. Armstrong stated that Plaintiff did not

equally incomplete, the Court has evaluated the Motion on the merits.

have a specified lunch time, but rather, he expected her to take a lunch break whenever her duties allowed. Dkt. No. 22-7 ("Armstrong Deposition") at 31:03-21.

## C. Plaintiff's Exempt Status

Defendants assert that Plaintiff's positions were classified as exempt under the civil service classifications for the Town of Whitehall, and therefore Plaintiff was not entitled to receive overtime compensation. Defs.' SMF ¶¶ 9-10; Dkt. No. 22-11 ("Washington County Civil Service Rules") (listing "Clerk to Supervisor" and "Budget Officer" as exempt positions, but silent as to "Clerk to Highway Superintendent"). Plaintiff admits that her positions were exempt under civil service law, but denies that her positions were exempt from overtime compensation. Pl.'s SMF ¶ 10; Jones Decl. ¶ 51. Armstrong stated that he relied on the Washington County Civil Service Rules when determining that Plaintiff was an exempt employee. Armstrong Dep. at 26:01-24. Plaintiff argues that her positions were misclassified as exempt, and that she should have been entitled to overtime compensation because she was expected to work more than forty hours per week. Jones Dep. at 32:19-33:11. Plaintiff admits that she never requested to have her positions reclassified from "exempt" to "nonexempt." Id. at 34:20-35:02. In the Spring of 2012, however, Plaintiff asked Armstrong to change her job title to comptroller, which Plaintiff believed better suited her actual duties. Id. at 34:20-36:02. Plaintiff does not recall submitting any formal or written request to have her job reclassified as comptroller. Id. at 40:15-20.

## D. Compensatory Time Arrangement

When Plaintiff began serving as Budget Officer, she was asked by Gordon to assist in preparing for a state audit of the Town's finances. Id. at 32:19-33:11. This project often required Plaintiff to work more than thirty-five hours per week. Id. Gordon agreed to compensate Plaintiff

for these hours by providing "comp time" for any hours Plaintiff worked in excess of thirty-five hours per week. Defs.' SMF ¶ 12; Jones Dep. at 33:06-11. Plaintiff kept track of the comp time she earned and Gordon signed off on the comp time every month. Jones Dep. at 33:12-16. At some point in 2010 or 2011, Gordon became concerned that Plaintiff had accrued too much comp time and advised her to use her comp time by the end of the year. Id. at 34:07-18.

Armstrong replaced Gordon as Town Supervisor in January 2012. Defs.' SMF ¶ 2. Plaintiff was reappointed to her positions during the Town's annual organization meeting on January 2, 2012. Id. ¶ 13. When Armstrong took office, he advised Plaintiff that he would honor any comp time she had accrued pursuant to her agreement with former Supervisor Gordon, but that he would not continue the policy of providing Plaintiff comp time for any hours she worked in excess of thirty five. Id. ¶ 12; Armstrong Dep. at 22:02-16. Plaintiff used all but fourteen hours of the comp time she had accrued under Gordon's tenure. Armstrong Dep. at 22:19-20.

### E. Plaintiff's Concerns Over Highway Budgeting Practices

In August 2012, Plaintiff spoke with Pratt about what she perceived to be improper budgeting practices within the Town Highway Department. Jones Dep. at 62:06-14. Specifically, Plaintiff contends that Pratt intentionally overbudgeted for personnel, and then used the excess money to purchase equipment. Id. at 73:04-10. Although Plaintiff was aware of these budgeting practices during 2010 and 2011, she felt uncomfortable confronting Pratt about them because she was relatively new to her position. Id. at 63:04-12. In 2012, Plaintiff confronted Pratt about these budgeting practices, to which Pratt responded, "[t]hen they're going to take away my money," slammed the door, and left. Id. at 63:13-65:09. When Plaintiff told a coworker that she had reported this activity to both Pratt and Armstrong, the coworker warned "[t]hey'll have your job."

4

Id. at 64:21-25.

On October 9, 2012, Plaintiff sent a letter to Armstrong, stating that she had accrued twenty-one hours of compensation time under Supervisor Gordon's tenure that she had not yet used. Defs.' SMF ¶ 16; Dkt. No. 22-12 ("Letter"). In the Letter, Plaintiff also requested raises for herself and Pratt. Letter. Plaintiff also reiterated her concerns over the Highway Department's budgeting practices. Id.; Defs.' SMF ¶ 18; Pl.'s SMF ¶ 18. Defendants state that there have been at least three independent audits of the Town's budget since 2008, and none of these audits revealed any budgetary improprieties. Defs.' SMF ¶ 19. Plaintiff counters that the audits did not necessarily investigate the propriety of the Highway Department's budgeting practices. Pl.'s SMF ¶ 19. Armstrong recalls receiving Plaintiff's Letter, but stated that he just filed it away and did not feel that it was necessary to discuss the issue with Plaintiff, because in his opinion, Plaintiff's disagreement with Pratt did not rise to the level of impacting her work. Armstrong Dep. at 47:10-22.

### F. Decision Not to Reappoint Plaintiff

Armstrong contends that over the course of various lunches with supervisors from other towns, he learned that the Town was paying far more for the position of Budget Officer than neighboring towns were paying for comparable services, and much of the difference was comprised of Plaintiff's benefits. Armstrong Dep. at 35:15-37:04. In December 2011, near the end of Plaintiff's one-year term, Armstrong participated in an executive session with the Town Board, where the Town attorney, Christian Morris, was also present. Id. at 37:15-24, 39:1-7. At the executive session, Armstrong discussed his concerns regarding Plaintiff's compensation and the possibility of outsourcing the Budget Officer position to an independent contractor, Joel Carpenter

("Carpenter"), who performed this work for neighboring towns. Id. at 39:08-40:04.

On January 9, 2013, Armstrong informed Plaintiff that she would not be reappointed to her positions. Defs.' SMF ¶ 23. The conversation was confirmed in a letter dated the same day. Id.; Dkt. No. 22-14 ("Termination Letter"). Defendants continued to pay Plaintiff's salary and health insurance until February 8, 2013 and Plaintiff was paid for the twenty-four hours in compensatory time she claimed that she was owed in her October 2012 Letter. Defs.' SMF ¶ 24; Armstrong Dep. at 65:20-23. Armstrong contends that the decision not to reappoint Plaintiff resulted solely from budget concerns and his belief that she was overpaid. Armstrong Dep. at 12:23-14:08. Following the decision not to reappoint Plaintiff, the Town hired Carpenter to fulfill the Budget Officer's job as an independent contractor. See Dkt. Nos. 22-13 ("Budget Officer Worksheet"); 22-15 ("Carpenter Letter"); Armstrong Dep. at 07:20-08:10. According to the Town, Plaintiff's salary and benefits amounted to an expenditure of $54,528.00 annually. Budget Officer Worksheet at 1. The Town pays Carpenter $26,400.00 per year to perform the Budget Officer position. Id.[2] According to Armstrong, the Budget Officer position comprised ninety percent of Plaintiff's work load. Armstrong Dep. at 70:08-25.

Defendants contend that as an appointed employee, Plaintiff served at the pleasure of the officials who appointed her. Defs.' SMF ¶ 11. Plaintiff contends that even if she is deemed an "at will" employee, she still "ha[s] rights with regard to whistleblower and retaliation protections," and that she "had an expectation that [her] job would not be taken for reporting illegal and improper government action." Jones Decl. ¶ 44. Further, she argues that she had an expectation that she

---

[2] Carpenter does not fulfil the roles of Clerk to the Supervisor or Clerk to the Highway Superintendent. Armstrong Dep. at 69:21-23. The Town eliminated those positions as a cost-saving measure. Id.

would not be fired absent misconduct. Id. In support of this, Plaintiff states that she was informed by former Supervisor Gordon that the position was hers for as long as she wanted, unless she committed misconduct. Id. at 45. Plaintiff maintains that it is customary for appointed employees to be reappointed each year, and that the only employee Plaintiff knows who was not reappointed had been the subject of numerous performance-related complaints. Id. ¶ 47.

Armstrong contends that he did not need to involve the Town Board in the decision not to reappoint Plaintiff because, as the Town Supervisor, he had the discretion to appoint or not reappoint Plaintiff to her positions. Armstrong Dep. at 38:03-08. Armstrong claims that he struggled with the decision from sometime in mid-November until he ultimately notified Plaintiff on January 9. Id. at 40:05-20. Armstrong did not discuss his concerns with Plaintiff prior to making the decision because he knew that she already felt that she was not being paid adequately and believed that she would not accept any reduction in her salary or benefits. Id. at 40:21-41:07.

Plaintiff assertss that she would gladly have performed the Budget Officer job at a rate lower than that offered to Joel Carpenter, and that she would have foregone any benefits. Jones Decl. at ¶ 32. Plaintiff contends that the fact that Armstrong never asked whether Plaintiff would perform the job for less salary and no benefits "shows his real motive was not to save money; rather, it was retribution and retaliation for questioning Mr. Pratt." Id. ¶ 33.

### G. Summary of the Complaint

Plaintiff commenced this action on July 9, 2013, asserting the following claims: (1) violation of procedural due process pursuant to 42 U.S.C. § 1983 against the Town, Armstrong, and Pratt; (2) violation of New York Civil Service Law § 75-b for unlawful retaliation against the Town, Armstrong, and Pratt; (3) wilful violation of 29 U.S.C. § 216, the Fair Labor Standards Act

("FLSA") against the Town; (4) violation of New York Wage and Hour laws against the Town for failure to provide an uninterrupted lunch break and failure to properly compensate Plaintiff for all hours worked; and (5) breach of contract against the Town. See generally Compl. Plaintiff timely filed a Notice of Claim on March 28, 2013. See id. Ex. A.

On October 17, 2014, Defendants filed the Motion presently pending before the Court. Mot. Plaintiff filed a Response, Dkt. No. 28-6 ("Response"), and Defendants filed a Reply, Dkt. No. 30 ("Reply"). Defendants move for summary judgment on the following grounds: (1) Plaintiff failed to show that the violation of her civil rights resulted from a municipal policy or custom; (2) Plaintiff did not have a constitutionally protected property interest in her continued employment; (3) Punitive damages are not available against the Town and are not warranted against the individual Defendants; (4) the individual Defendants are entitled to qualified immunity; (5) Plaintiff was an exempt employee for the purposes of the FLSA, 29 U.S.C. § 207(a)(1), and New York Wage and Hour Law; and (6) Plaintiff fails to state a claim under New York State Civil Service Law § 75-b. See generally Mem.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis

for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party will bear the burden of proof on a specific issue at trial, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. Id. If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact. Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. Plaintiff's § 1983 Due Process Claim

Defendants contend that they are entitled to summary judgment for Plaintiff's procedural due process claim brought under 42 U.S.C. § 1983 because, as an appointed employee with only a one-year term, Plaintiff did not have a constitutionally protected property interest in her continued employment. Mem. at 4-5. Plaintiff counters that she had an expectation that she could only be fired for misconduct. Resp. at 9.

The Fourteenth Amendments prohibits the discharge of a public employee with a property

interest in continued employment, absent a pre-termination hearing. <u>Catone v. Spielmann</u>, 149 F.3d 156, 160 (2d Cir. 1998). The party asserting due process rights has the burden of establishing a legitimate property interest in continued employment. <u>Caraccilo v. Vill. of Seneca Falls, N.Y.</u>, 582 F. Supp. 2d 390, 397 (W.D.N.Y. 2008). Property interests "are defined by existing rules or understandings that stem from an independent source such as state law." <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). "In the employment context, a property interest arises only where the [employer] is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." <u>S & D Maint. Co. v. Goldin</u>, 844 F.2d 962, 967 (2d Cir. 1988). To determine whether a public employee in New York state has a property interest in his or her position, thereby requiring a pretermination hearing, courts should look to "New York Civil Service Law and the statutes which create a particular position or the authority to appoint or remove an individual to or from the position." <u>Todaro v. Norat</u>, 112 F.3d 598, 600 (2d Cir. 1997).

Defendants assert that Plaintiff was not a covered employee under New York Civil Service Law § 75, and therefore Plaintiff did not have a legitimate property interest in her continued employment. Mem. at 5. New York Civil Service Law § 75 provides that specified public employees "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. CIV. SERV. LAW § 75. The statute covers only the following employees: (a) permanent appointees in the competitive class of the classified civil service; (b) permanent appointees or permanent employees in the classified service who were honorably discharged from the armed forces of the United States; (c) non-competitive employees who do not hold positions that are designated as confidential or involve influencing policy, who have completed at least five years

of continuous service; (d) Homemakers or Home Aides in New York City with at least three years of continuous service; and (e) certain police officers.  Id.  Plaintiff's positions do not fall under any of these classifications.  Further, Plaintiff fails to argue that her positions were covered by New York Civil Service Law § 75.  See Resp. at 8-9.  Therefore, the Court concludes that New York Civil Service Law § 75 does not apply to any of Plaintiff's positions.  See, e.g., Rusk v. N.Y. State Thruway Auth., 37 F. Supp. 3d 578 (W.D.N.Y. 2014) (adopting magistrate judge's finding that assistant public information officer was not covered under § 75).

The Court will now look to the terms of Plaintiff's particular appointment and the surrounding circumstances to determine whether Plaintiff had a protected property interest.  It is well established that an employee must have more than a unilateral expectation of continued employment; rather, he or she must have a "legitimate claim of entitlement to it."  Roth, 408 U.S. at 577.  In Roth, the Court considered the terms of the plaintiff's appointment, which gave the plaintiff a property interest until a certain date, after which the plaintiff would have to be reappointed in order to maintain any property interest in his continued employment.  Id. at 578.  By limiting the duration of plaintiff's appointment and by making no provision for renewing the contract, the Court concluded that the plaintiff had no possible claim of entitlement to re-employment.  Id.  Similarly, the Second Circuit has found that a town's former director of parks and recreation did not have a constitutionally protected property interest in his continued employment where both parties acknowledged that the position was appointed for a limited duration.  MacInnis v. Town of Orange, 421 F. App'x 36, 37-38 (2d Cir. 2011).  In MacInnis, the court expressly rejected the plaintiff's argument that the town employee handbook created an implied promise that an employee would only be terminated for cause, finding that the handbook was too broad and general in scope, and

applied to all town employees, rather than addressing plaintiff's position specifically.  Id.

Plaintiff argues that she "had an expectation that she could only be fired for misconduct." Resp. at 9.  Plaintiff claims that this was not a unilateral expectation— rather, it resulted from a conversation she had with former Supervisor Gordon when she was hired.  Id.  According to Plaintiff, Gordon told her the "position was hers for as long as she wanted it unless she did something to get herself fired."  Id.  However, Plaintiff does not contest the fact that her position was for a fixed term and was subject to re-appointment.  Plaintiff's protected property interest was therefore coextensive with the length of her appointment.  See, e.g., Caraccilo, 582 F. Supp. 2d at 395 ("The parties do not dispute that the upon the expiration of a deputy clerk's two-year term, there is no statutory right to continued employment in that position, unless the person holding it is reappointed to another term."); Preddice v. Callanan, 461 N.Y.S.2d 554, 555 (N.Y. App. Div. 1983) (rejecting argument that employee who was not covered by § 75 had a *de facto* claim to continued employment because of actions by his employer that "left his position in limbo").  In support of her claim that she has a constitutionally protected property interest, Plaintiff asserts that she believed that she could only be fired for misconduct, that she was never made aware of any problems with her performance, and that it was customary for other appointed employees to be reappointed each year.  Resp. at 9.  Plaintiff cites no authority in support of her position, and the Court finds these arguments insufficient to create anything more than a unilateral expectation of continued employment.  The Court finds that Plaintiff did not have a constitutionally protected property interest in her continued employment, and therefore Defendants are entitled to summary judgment

on Plaintiff's § 1983 procedural due process claim.[3]

## B. Retaliation Claim

Plaintiff alleges that she was retaliated against for reporting what she perceived to be improper budgeting practices by Pratt, in violation of New York Civil Service Law § 75-b. Defendants argue that Plaintiff's claim fails because the budgeting practice Plaintiff reported was all "legitimate and not in contravention of Highway Law sections 141 and 285-A." Mem. at 11. Defendants seek summary judgment on the grounds that the activity that Plaintiff reported was not an "improper government action" and that Plaintiff cannot establish a causal connection between the disclosure and her termination. Mem. at 10-11.

As a preliminary matter, a claim under New York Civil Service Law § 75-b may only be brought against the public employer and not against individuals sued in their individual capacities. See Rusk, 37 F. Supp. 3d at 586; see also Fry v. McCall, 945 F. Supp. 655, 666 (S.D.N.Y. 1996) ("[S]ection 75-b only provides a cause of action against government entities, not individuals, because it does not include individuals in its definition of public employer." Consequently, Plaintiff's § 75-b claims against Armstrong and Pratt must be dismissed.

Defendants argue that Plaintiff, "as an exempt employee, is not entitled to Whistle Blower protection under Civil Service Law § 75-B §3(c) of Civil Service Law §75-B," and thus Plaintiff's only remedy must come from New York State Labor Law § 740. Reply at 5. The Court finds this argument unavailing. See, e.g., McDonnell v. Lancaster, 822 N.Y.S.2d 227, 230 (N.Y. 2006)

---

[3] Since the Court finds that Plaintiff does not have a constitutionally protected property interest, it is unnecessary to evaluate whether Plaintiff has stated a viable § 1983 claim against the Town under the "final policy maker" theory recognized in Pembaur v. Cincinnati, 475 U.S. 469 (1986).

("Wholly without merit is Respondent's argument that CSL §75-b does not apply to a provisionally appointed employee like Petitioner. CSL § 75-b uses very broad language to define the types of protected public employees who can seek protection under this statute, including 'any person holding a position by appointment or employment in the service of a public employer except judges or justices of the unified court system and members of the legislature.'"). The Court finds that Plaintiff is a protected employee under § 75-b, and it is therefore unnecessary to evaluate Plaintiff's retaliation claim under New York State Labor Law § 740.

New York Civil Service Law § 75-b(2)(a) provides:

> A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employee or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation.

N.Y. CIV. SERV. LAW § 75-b(2)(a). Thus, in order to state a claim, a plaintiff must allege (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which she reasonably believes to be true and which she reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action. Id. "Section 75-b defines a 'personnel action' as 'an action affecting compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance.'" Burns v. Cook, 458 F. Supp. 2d 29, 44 (N.D.N.Y. 2006) (quoting N.Y. CIV. SERV. LAW § 75-b(1)(d)).

The parties do not dispute that Plaintiff's termination constitutes an adverse personnel action, nor do they dispute that Plaintiff disclosed information to a governmental body. Defendants argue that Plaintiff's claim fails because the budgetary practice at issue was not illegal and did not endanger public health or safety. Mem. at 10-11. The Court need not resolve that issue, however, because § 75-b(2)(a)(ii) requires only that Plaintiff had a reasonable belief that she was complaining of an improper government action, which is defined as "any action by a public employer or employee . . . which is in violation of any federal, state or local law, rule or regulation." See Catapano-Fox v. City of N.Y., No. 14 Civ. 8036, 2015 WL 3630725, at *9 (S.D.N.Y. June 11, 2015) (quoting N.Y. CIV. SERV. LAW § 75-b(2)(a)); Burns, 458 F. Supp. 2d at 44.

While working as the Town Budget Officer, Plaintiff observed that Pratt intentionally included a budget request for a four-person crew for the Highway Department, even though the Department only employed and intended to employ three people. Resp. at 4. Plaintiff alleges that after the money was allocated, Pratt would then transfer the money to another line item and use it to buy machinery or equipment. Id. In both the Complaint and the Response, Plaintiff fails to identify a specific law, rule, or regulation that she believes is violated by Pratt's budgetary practices. However, Plaintiff does support her conclusory allegation that Pratt's budgeting practices were illegal by citing to Korn v. Gulotta, 530 N.E. 2d 816 (N.Y. 1998), where the court found that a county's practice of holding estimated surplus moneys off-budget in order to use the surplus for other purposes was a violation of General Municipal Law § 51. Moreover, § 75-b is a remedial statute and does not require an actual violation of a law, rule, or regulation, as long as the plaintiff had a reasonable belief that the reported actions were illegal. See Catapano-Fox, 2015 WL 3630725 at *10; see also Zielonka v. Town of Sardinia, 991 N.Y.S.2d 491, 493 (N.Y. App. Div. 2014)

15

("Civil Service Law § 75-b does not require an actual violation of the law for a subsequent action to be maintained thereunder."). Construing all facts and inferences in Plaintiff's favor, the Court finds that Plaintiff has adequately alleged that she had a reasonable belief that Pratt's budgeting practices constituted an improper governmental action.

Defendants argue that Plaintiff's § 75-b claim fails because Defendants have offered a separate and independent basis for Plaintiff's termination. Mem. at 11. In order to satisfy the causation element for a § 75-b claim, a public employee must establish that "but for" the protected activity, the adverse personnel action by the public employer would not have occurred. N.Y. CIV. SERV. LAW § 75-b(3)(a). Defendants argue that Plaintiff was terminated because the Town chose to out-source her position to Carpenter as a cost-saving measure. Mem. at 11. Plaintiff counters that she successfully held her position from the time she was appointed in 2010 until the decision not to reappoint her was made in 2012 with no adverse performance reviews. Resp. at 6-7. She also states that the decision to end her employment with the Town was made some time in the months immediately following her letter to Armstrong. Id. Defendants seemingly argue that as long as an employer offers some separate and independent reason for an adverse action against an employee, the court should dismiss the employee's § 75-b claim. See Mem. at 11. However, this argument is inconsistent with § 75-b's remedial purpose and contravenes § 75-b's federal counterparts. The Court finds that the true motivation behind the Defendants' decision to terminate Plaintiff's employment is a genuine issue of material fact. See In re Kowaleski, 942 N.E. 2d 291, 295 (N.Y. 2010) ("In order to be effective, whistleblower protections like those embodied in Civil Service Law § 75-b must shield employees from being retaliated against by an employer's selective application of theoretically neutral rules. Thus, a separate determination regarding the employer's motivation in

bringing the action is necessary if section 75-b is to truly 'establish[] a major right for employees—the right to speak out against dangerous or harmful employer practices.'") (quoting Governor's Approval Mem., Bill Jacket, L. 1984, ch. 660, at 5)).  Therefore, to the extent that Defendants seek summary judgment on Plaintiff's § 75-b claim, the Motion is denied.

### C.  FLSA and New York State Labor Law Claims

Defendants contend that Plaintiff falls into the administrative exception to the FLSA's overtime provisions, and that even if she was not an exempt employee, she did not work more than forty hours per week, which is necessary to qualify for overtime compensation.  Mem. at 8-10.  Plaintiff argues that Defendants failed to articulate the proper legal standard for evaluating the administrative exception, and therefore summary judgment is not appropriate.  Resp. at 12.

The FLSA is a remedial statute—therefore, all exemptions should be "narrowly construed against the employer and the burden of establishing their applicability is upon the employer."  Bennett v. Progressive Corp., 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002); see also Meacham v. Knolls Atomic Power Lab, 554 U.S. 84, 92 (2008) (finding that "the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the ultimate burden of proof.").

Section 213(a)(1) of the FLSA exempts "bona fide executive, administrative, or professional" employees from the FLSA's overtime provisions.  See Marden v. Town of Bedford, N.Y., 989 F. Supp. 500, 502 (S.D.N.Y. 1998) (quoting 29 U.S.C. § 213(a)(1)).[4]  In order to qualify

---

[4] New York State Labor Law ("NYSLL") "applies the same exemptions as the FLSA."  Ramos v. Baldor Specialty Foods, Inc., No. 10 Civ. 6271, 2011 WL 2565330, at *5 n.3 (S.D.N.Y. June 16, 2011).  However, "NYSLL differs from the FLSA in only one respect—to qualify for overtime exemption, an employer need not satisfy a salary test, only a duties test."  Zubair v. EnTech Eng'g, 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011).  The Court's analysis under the FLSA is

for exempt status under § 213(a)(1), an employee must earn a specified minimum amount on a "salary basis." 29 C.F.R. § 541 (2004). An employee is paid on a salary basis if he "regularly receives each pay period . . . a predetermined amount . . . which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602 (2004). Additionally, the employee's salary must amount to at least $455 per week, the employee's primary duties must consist of performing "office or non-manual work directly related to the management or general business operations of the employer," and the employee must exercise "discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a) (2004).

While there is significant evidence in the record suggesting that Plaintiff falls within the administrative exception to the FLSA, the Court finds that Defendants have not met their burden of establishing both the non-existence of genuine issues of material fact and their entitlement to judgment as a matter of law. See FED. R. CIV. P. 56(c); see also Barry v. Town of Elma, No. 02 CV 344, 2004 WL 2980758, at *5 (W.D.N.Y. Dec. 23, 2004) (denying summary judgment on plaintiff's FLSA claim where defendant failed to meet its burden of showing that administrative exception applied); Zubair, 808 F. Supp. 2d at 600 ("Defendants' conclusory statement that Zubair qualifies as a 'professional'. . . without reference to any support in the record, fails to satisfy their burden of establishing that Zubair is excluded from the FLSA requirements"). In addition to failing to cite to the most relevant version of the administrative exception, Defendants fail to offer any analysis of the facts of this case under the applicable legal standard. Therefore, the Court finds that Defendants

_____

equally applicable to Plaintiff's NYSLL claims, and the Court finds that Defendants have similarly failed to meet their burden of showing that the administrative exception applies for Plaintiff's NYSLL claim.

have failed to meet their burden of showing that the administrative exception applies.

Consequently, summary judgment is denied with respect to Plaintiff's FLSA and NYSLL claims.

### D. Qualified Immunity

The doctrine of qualified immunity protects government officials acting in their official capacities from liability for civil damages as long as their conduct does not "violate clearly-established rights of which an objectively reasonable official would have known," Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999), or unless it was objectively unreasonable for them to believe that their acts did not violate those rights, Anderson v. Creighton, 483 U.S. 635, 638-39 (1987). Defendants have the burden of offering proof that it was objectively reasonable for them to believe that their actions did not violate Plaintiff's clearly established rights and that they are entitled to qualified immunity. See Young v. Selsky, 41 F.3d 47, 54 (2d Cir. 1994). "To be deprived of the defense of qualified immunity, a public official must not simply violate plaintiff's rights; rather, the violation of plaintiff's rights must be so clear that no reasonable public official could have believed that his actions did not violate such rights." Stanley v. Cooper, 996 F. Supp. 316, 321 (S.D.N.Y. 1998). When evaluating a claim for qualified immunity at the summary judgment stage, a court must view the evidence in the light most favorable to the nonmoving party, and may not resolve genuine factual disputes. Tolan v. Cotton, 134 S.Ct. 1861, 1866 (2014).

Defendants argue that Pratt and Armstrong are entitled to qualified immunity because they were acting as government officials in the discharge of their duties when they made the decision to terminate Plaintiff's employment. Mem. at 8. Plaintiff counters that whether Defendants were simply performing their discretionary duties or whether they improperly violated Plaintiff's right to be free from retaliation is a genuine issue of fact, precluding summary judgment. Resp. at 11. For

the same reasons discussed with respect to Plaintiff's § 75-b claim, *supra*, the Court finds that whether Pratt and Armstrong are entitled to qualified immunity raises genuine issues of material fact—specifically, whether Armstrong and Pratt were acting with retaliatory animus, or whether Plaintiff was not reappointed for budgetary reasons. Therefore, Defendants' Motion for summary judgment on the issue of qualified immunity is denied.

### E.  Punitive Damages

Defendants argue that punitive damages are not available against the Town or the individual Defendants. Mem. at 6. Specifically, Defendants assert that towns are immune from punitive damages as a matter of law, and that the individual Defendants lack the requisite intent to give rise to an award of punitive damages. Id. at 7-8.

As a matter of law, Defendants are correct that Plaintiff cannot maintain a claim for punitive damages against the Town. Gauthier v. Town of Bethlehem, No. 91-CV-628, 1993 WL 489684, at *4 (N.D.N.Y. Nov. 24, 1993) (citing Sharapata v. Town of Islip, 437 N.E. 2d 1104, 56 N.Y.2d 332, 336 (N.Y. 1982) ("'Damages awarded for punitive purposes . . . are not sensibly assessed against the governmental entity itself.'" (quoting City of Newport v. Fact Concerts, 453 U.S. 247, 267 (1981)). However, "[a]lthough a municipality itself is immune from a claim for punitive damages . . . that immunity does not extend to a municipal official sued in his individual capacity." New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 122 (2d Cir. 2006) (internal citations omitted). "If there were sufficient evidence to permit the factfinder to infer that the responsible official was motivated by malice or evil intent or that he acted with reckless or callous indifference," the fact that the official was acting with the approval of the municipality would not protect the individual defendant from liability for punitive damages. Id. As discussed *supra*, the Court finds

that there are genuine issues of fact regarding Armstrong and Pratt's motivations, which preclude the entry of summary judgment regarding Plaintiff's claims for punitive damages against these Defendants. Therefore, Defendants' Motion is granted to the extent that it seeks dismissal of the punitive damages claims against the Town, but denied with respect to the individual Defendants.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 22) for summary judgment is **GRANTED in part** (as to Plaintiff's § 1983 due process claim and claim for punitive damages against the Town) and **DENIED in part** (as to Plaintiff's retaliation claim under NYS Civil Service Law § 75-b, Plaintiff's claims under the FLSA and NYSLL, Plaintiff's claims for punitive damages against the individual Defendants, and the issue of qualified immunity); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      July 30, 2015
            Albany, New York

Lawrence E. Kahn
U.S. District Judge